# BURNET, COMMISSIONER OF INTERNAL REVE-
## NUE, v. HARMEL.

No. 26.   Argued October 20, 21, 1932.—Decided November 7, 1932.

*Solicitor General Thacher,* with whom *Assistant Attorney General Youngquist,* and *Messrs. Whitney North Seymour, Sewall Key,* and *A. H. Conner* were on the brief, for petitioner.

*Messrs. Robert Ash* and *A. H. Britain,* with whom *Mr. Harry C. Weeks* was on the brief, for respondent.

*Mr. Walter E. Barton,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent, the owner in fee of Texas oil lands, executed oil and gas leases of the lands for three years and as long thereafter as oil or gas should be produced from them by the lessee, in return for bonus payments aggregating $57,000 in cash, and stipulated royalties, measured by the production of oil and gas by the lessee. In making his income tax returns under the Revenue Act of 1924 for the years 1924 and 1925, respondent reported the cash payments as gain from a sale of capital assets, taxable under the applicable section of the statute at a lower rate than other income. The Commissioner treated the pay-

ments as ordinary income taxed at the higher rate, and gave respondent notice of assessment for the deficiency. The order of the Board of Tax Appeals upholding the assessment, 19 B. T. A. 376, was reversed by the Court of Appeals for the Fifth Circuit, 56 F. (2d) 153, following its earlier decision in *Ferguson* v. *Commissioner,* 45 F. (2d) 573. It was held that because Texas law, unlike that of other states, regards an oil and gas lease as a present sale of the oil and gas in place, the gain resulting from the cash payment received as consideration for the leases was taxable only as gain from the sale of capital assets. This Court granted certiorari, 286 U. S. 536, to resolve a conflict of the decision below with that of the Court of Claims, under corresponding provisions of the Revenue Act of 1921, in *Hirschi* v. *United States,* 67 Ct. Cls. 637.

The Revenue Act of 1924, c. 234, 43 Stat. 262, like that of 1921, c. 136, 42 Stat. 232, taxed certain income derived from capital gains at a lower rate than other income. By § 208 (a) (1) " The term ' capital gain ' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921." By § 208 (a) (8) " capital assets " means property held by the taxpayer for more than two years but does not include property " which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business." Related provisions of the section define " capital loss " and " capital deductions " which, in some circumstances, are allowed as deductions from capital gain in order to arrive at the net gain taxed at the lower rate. The only question presented here is whether the bonus payments to the respondent, after allowed deductions, if any, are "gain from the sale or exchange of capital assets " within the meaning of the taxing act.

Before the Act of 1921, gains realized from the sale of property were taxed at the same rates as other income, with the result that capital gains, often accruing over long periods of time, were taxed in the year of realization at the high rates resulting from their inclusion in the higher surtax brackets. The provisions of the 1921 revenue act for taxing capital gains at a lower rate, reënacted in 1924 without material change, were adopted to relieve the taxpayer from these excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions. House Report No. 350, Ways and Means Committee, 67th Cong., 1st Sess. on the Revenue Bill of 1921, p. 10; see *Alexander* v. *King*, 46 F. (2d) 235.

It is an incident of every oil and gas lease, where production operations are carried on by the lessee, that the ownership of the oil and gas passes from the lessor to the lessee at some time and the lessor is compensated by the payments made by the lessee for the rights and privileges which he acquires under the lease. But notwithstanding this incidental transfer of ownership, it is evident that the taxation of the receipts of the lessor as income does not ordinarily produce the kind of hardship aimed at by the capital gains provision of the taxing act. Oil and gas may or may not be present in the leased premises, and may or may not be found by the lessee. If found, their abstraction from the soil is a time-consuming operation and the payments made by the lessee to the lessor do not normally become payable as the result of a single transaction within the taxable year, as in the case of a sale of property. The payment of an initial bonus alters the character of the transaction no more than an unusually large rental for the first year alters the character of any other lease, and the taxation of the one as ordinary income does not act as a deterrent upon conversion of capital assets, any more than the taxation of the other.

Moreover, the statute speaks of a " sale," and these leases would not generally be described as a " sale " of the mineral content of the soil, using the term either in its technical sense or as it is commonly understood. Nor would the payments made by lessee to lessor generally be denominated the purchase price of the oil and gas. By virtue of the lease, the lessee acquires the privilege of exploiting the land for the production of oil and gas for a prescribed period; he may explore, drill, and produce oil and gas if found. Such operations with respect to a mine have been said to resemble a manufacturing business carried on by the use of the soil, to which the passing of title of the minerals is but an incident, rather than a sale of the land or of any interest in it or in its mineral content. *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 414, 415; see *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, 521.

Long before the enactment of the capital gains provision in the 1921 Revenue Act, this Court had to determine whether a mining lease was to be regarded as a sale. In interpreting the Corporation Tax Law of 1909, it had occasion to consider the nature of the proceeds derived by the owner of mineral land from his own mining operations or from payments made to him by the lessee under a mining lease. That Act imposed an excise tax on corporations, measured by their income. Unlike the later revenue acts, it made no provision for a depletion allowance to be deducted from the proceeds of mining in order to arrive at the statutory income. It was argued that since the net result of the mining operation is a conversion of capital investment as upon a sale, the money received by the corporate owner or lessor, being its capital in a changed form, could not rightly be deemed to be income. But that argument was rejected, both with respect to the proceeds of mining operations carried on by the corporate owner on its land, *Stratton's Independence* v.

*Howbert, supra; Goldfield Consolidated Mines Co. v. Scott,* 247 U. S. 126; see *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103, 114, and with respect to payments made by the lessee to the corporate lessor under the provisions of a mining lease. *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503, 521, 522; *United States* v. *Biwabik Mining Co.,* 247 U. S. 116.

Although these cases arose under the Act of 1909, before the enactment of the capital gains provision in the 1921 Act, they established, for purposes of defining "income" in a tax measured by it, that payments by lessees to lessors under mining leases were not a conversion of capital, as upon a sale of capital assets, but were income to the lessor, like payments of rent. And before the 1921 Act this Court had indicated (see *Eisner* v. *Macomber,* 252 U. S. 189, 207), what it later held, that "income," as used in the revenue acts taxing income, adopted since the Sixteenth Amendment, has the same meaning that it had in the Act of 1909. *Merchants Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, 519; see *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330, 335.

Congress legislated in the light of this history, cf. *United States* v. *Merriam,* 263 U. S. 179, 187; and, in the absence of explicit language indicating a different purpose, it cannot be taken to have intended that an oil and gas lease under the capital gains provision, any more than a mineral lease under the earlier acts, should be treated like an ordinary sale of land or chattels, resulting in a conversion of capital assets. Such a construction would have disregarded legislative and judicial history of persuasive force; it would have adopted a distorted, rather than the common meaning of the term "sale," see *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552, 561, and would have tended to defeat rather than further the purpose of the Act. .

The respondent does not challenge the correctness of the construction of the statute which we adopt,[1] when applied to oil and gas leases under which the title to the oil and gas passes to the lessee only on severance from the leasehold. But it is argued that the section cannot be so applied to the bonus payments received by the lessor in the present case, because, under Texas law, an oil and gas lease operates immediately upon its execution to pass the title of the oil and gas, in place, to the lessee, and it is thus a sale of the oil and gas and a conversion of capital assets within the precise terms of § 208.

In *Group No. 1 Oil Corp.* v. *Bass,* 283 U. S. 279, this Court recognized that oil and gas leases have been characterized, in the decisions of the Texas courts, as present sales of the oil and gas in place, and we applied the rule of those decisions that ownership of the oil and gas passes from lessor to lessee on execution of the lease. There the question was not one of the interpretation of a federal statute, but of the power of the federal government to levy a tax upon the income of a lessee of state lands, derived from the sale of oil and gas abstracted by him from the land. It was objected that the tax was not within the power of the federal government because imposed on income derived from an instrumentality of the state. If the oil and gas had ceased to be property of the state before its removal by the lessee, it had, under the decisions of this Court, ceased to be an instrumentality of the state, and the income derived from it was within the taxing power of the national government. Whether the title

---

[1] The capital gains provision of the 1921 Act (§ 206) was held not to embrace receipts of the lessor from an oil and gas lease in *Burkett* v. *Commissioner,* 31 F. (2d) 667; *Berg* v. *Commissioner,* 33 F. (2d) 641; *Hirschi* v. *United States,* 67 Ct. Cl. 637; *Ferguson* v. *Commissioner,* 59 F. (2d) 891; and in *Alexander* v. *King,* 46 F. (2d) 235, a similar construction was placed upon the like provisions of the 1924 Act.

had so passed was a question of state law, and the affirmative answer of the state courts necessarily led to the conclusion that the lessee's income was not immune from federal income tax. Compare *Burnet* v. *Coronado Oil Co.,* 285 U. S. 393, 399.

Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. See *Weiss* v. *Weiner,* 279 U. S. 333, 337; *Burk-Waggoner Oil Assn.* v. *Hopkins,* 269 U. S. 110; *United States* v. *Childs,* 266 U. S. 304, 309. State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. See *Crooks* v. *Harrelson,* 282 U. S. 55; *Poe* v. *Seaborn,* 282 U. S. 101; *United States* v. *Loan & Building Co.,* 278 U. S. 55; *Tyler* v. *United States,* 281 U. S. 497; see *Von Baumbach* v. *Sargent Land Co., supra,* 519.

But § 208 neither says nor implies that the determination of "gain from the sale or exchange of capital assets" is to be controlled by state law. For the purpose of applying this section to the particular payments now under consideration, the Act of Congress has its own criteria, irrespective of any particular characterization of the payments in the local law. See *Weiss* v. *Weiner, supra,* 337. The state law creates legal interests but the federal statute determines when and how they shall be taxed. We examine the Texas law only for the purpose of ascertaining whether the leases conform to the standard which the taxing statute prescribes for giving the favored treatment to capital gains. Thus tested we find in the

Texas leases no differences from those leases where the title to the oil and gas passes only on severance by the lessee, which are of sufficient consequence to call for any different application of § 208. The fact that title to the oil and gas is said to pass before severance, rather than after, is not such a difference. The economic consequences to the lessor of the two types of lease are the same. Under both, the payments made by the lessee are consideration for the right which he acquires to enter upon and use the land for the purpose of exploiting it, as well as for the ownership of the oil and gas; under both the bonus payments are paid and retained, regardless of whether oil or gas is found and despite the fact that all which is not abstracted will remain the property of the lessor upon termination of the lease.

Title to the oil and gas likewise passes from the land owner when he conducts mining operations on his own land. But, as was pointed out in *Stratton's Independence* v. *Howbert,* since that is only an incident to the use of his land for oil production, the operation, considered in its entirety, cannot be viewed as a sale or a conversion of capital assets. Like considerations govern here.

The court below thought that the bonus payments, as distinguished from the royalties, should be treated as capital gain, apparently because it assumed that the statute authorizes a depletion allowance upon the royalties alone. See *Ferguson* v. *Commissioner,* 45 F. (2d) 573, 577. But bonus payments to the lessor have been deemed to be subject to depletion allowances under § 214a (9), Revenue Act of 1924, by Art. 216, Treasury Regulations 65, as well as under earlier acts. § 214 a (10), Revenue Act of 1921, Art. 215, Treasury Regulations 62. Cf. *Murphy Oil Co.* v. *Burnet,* 55 F. (2d) 17. The distinction, so far as we are advised, has not been taken in any other case. See *Alexander* v. *King, supra; Ferguson* v. *Commissioner,* 59 F. (2d) 891; Appeal of Nelson Land & Oil Co., 3 B. T. A.

315; *Burkett* v. *Commissioner*, 31 F. (2d) 667, and see the same case before the Board of Tax Appeals, 7 B. T. A. 560; *Berg* v. *Commissioner*, 33 F. (2d) 641; *Hirschi* v. *United States, supra.* We see no basis for it. Bonus and royalties are both consideration for the lease and are income of the lessor. We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than royalties which are measured by the actual production. See *Work* v. *Mosier*, 261 U. S. 352, 357–358.

*Reversed.*