## KIRBY PETROLEUM CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

NO. 56.

Argued November 6, 1945.—Decided January 28, 1946.

*Mr. Homer L. Bruce* for petitioner in No. 56.

*Miss Helen R. Carloss,* with whom *Solicitor General McGrath, Assistant Attorney General Samuel O. Clark,*

*Jr., Messrs. Sewall Key* and *Hilbert P. Zarky* were on the brief, for the Commissioner.

*Mr. Sidney D. Krystal,* with whom *Mr. Oscar Moss* was on the brief, for respondent in No. 197.

*Messrs. Cullen R. Liskow* and *Norman F. Anderson* filed a brief in No. 56, as *amici curiae,* urging reversal.

MR. JUSTICE REED delivered the opinion of the Court.

The writ of certiorari in *Kirby Petroleum Co.* v. *Commissioner* brings here for review the judgment of the Circuit Court of Appeals for the Fifth Circuit, 148 F. 2d 80, reversing the decision of the Tax Court, 2 T. C. 1258, which had sustained the taxpayer's position. The narrow issue is the deductibility under Sections 23 (m) and 114 (b) (3)[1] of the Internal Revenue Code of the depletion

---

[1] Internal Revenue Code:

"SEC. 23. Deductions from Gross Income.

"In computing net income there shall be allowed as deductions:

. . . . .

"(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. . . . In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. . . ."

"SEC. 114. Basis for Depreciation and Depletion.

. . . . .

"(b) BASIS FOR DEPLETION.—

. . . . .

"(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. . . ."

allowance of 27½ per centum of gross income from the property during the taxable year, permitted by those sections from the taxpayer's gross income for 1940 from certain oil leases.

The taxpayer owned the fee simple title to certain Texas lands, except for a minor mineral interest which is not here involved. It leased the lands to two companies for the production of oil, gas and other minerals for a cash bonus, a royalty in the usual form and an agreement, executed contemporaneously with the lease and as part consideration therefor, that the taxpayer should receive twenty per cent of the net money profits realized by the lessees from their operations under the lease.

The same narrow issue is in *Commissioner* v. *Crawford.* In this latter case, the taxpayer owned an interest in fee in certain real estate in California. She, together with her co-owners, entered into several leases for portions of the property for the production of oil, gas and other minerals. For an understanding of the issues here presented, it is unnecessary to analyze the leases further than to say that they were given in consideration of bonuses, royalties in the usual form and additional payments from the net profits of the operation.[2] The Commissioner assessed a deficiency because of the denial of a claimed depletion allowance for 1938, 1939 and 1940. The Tax Court supported the taxpayer's position. The Circuit Court of Appeals affirmed. 148 F. 2d 776.

In both cases, the Commissioner concedes that the depletion allowance of §§ 23 (m) and 114 (b) (3) is appli-

[2] The following clause of one lease will illustrate the type of arrangement which produced the additional payments:

"When, and as soon as the 'Income Credits' of said account shall exceed the 'Operating Charges' of the Lessee, the Lessor shall be entitled to a secondary and additional royalty, the amount thereof to be one-half of such difference between the 'Operating Charges' and 'Income Credits' of said account." The leases defined methods of computation.

cable to the bonuses and royalties.[3]   The statutory provisions are identical for all years.   The 27½ per centum allowed by § 114 (b) (3) was therefore properly deducted by the taxpayers from these bonuses and royalties.   In each of these years there was also income to these taxpayers from the lease provisions for the lessors to share in the net profits from the oil extracted from the leased lands.   The taxpayers claim the right to deduct the 27½ per cent depletion from these receipts also.   These are the deductions which the Commissioner disallowed.   On account of the conflicting decisions of the Circuits in these cases on the point, certiorari was granted by us.   325 U. S. 845; 326 U. S. 703.

The present provisions for depletion allowances have been worked out so as to give the holder of an economic interest in the oil or other natural resource an allowance for depletion.[4]   While there are income incidents to the utilization of natural resources, there is also an obvious exhaustion of the capital used to produce the income.   In theory the aggregate sum allowed for depletion would equal the value of the natural resource at the time of its

---

[3] *Burnet* v. *Harmel,* 287 U. S. 103, 111; *Palmer* v. *Bender,* 287 U. S. 551, 557.   See *Anderson* v. *Helvering,* 310 U. S. 404, 409.

[4] Treasury Regulations 103, § 19.23 (m)–1, as amended by T. D. 5413, 1944 Cum. Bull. 124, 129:

"Under such provisions, the owner of an economic interest in mineral deposits or standing timber is allowed annual depletion deductions.   An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the severance and sale of the mineral or timber, to which he must look for a return of his capital.   But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because, through a contractual relation to the owner, he possesses a mere economic advantage derived from production.   Thus, an agreement between the owner of an economic interest and another entitling the latter to purchase the product upon production or to share in the net income derived from the interest of such owner does not convey a depletable economic interest."

acquisition by the taxpayer, so that at the exhaustion of the resource the taxpayer would have recovered through depletion exactly his investment. The administrative difficulties in taxation of oil and gas production in view of the uncertainties of quantities and time of acquisition, that is at the purchase of the property or at the discovery of oil or gas, finally have brought Congress to the arbitrary allowance of 27½ per cent now embodied in § 114 (b) (3).[5] Thus, the 27½ per cent is appropriated by the statute to the restoration of the taxpayer's capital and the rest of the proceeds of the natural asset becomes gross income. *Anderson* v. *Helvering,* 310 U. S. 404, 407–8. It follows from this theory that only a taxpayer with an economic interest in the asset, here the oil, is entitled to the depletion. *Palmer* v. *Bender,* 287 U. S. 551, 557; *Thomas* v. *Perkins,* 301 U. S. 655, 659. By this is meant only that under his contract he must look to the oil in place as the source of the return of his capital investment. The technical title to the oil in place is not important. Title in a case of a lease may depend upon the law of the state in which the deposit lies. *Burnet* v. *Harmel,* 287 U. S. 103, 109–10. The test of the right to depletion is whether the taxpayer has a capital investment in the oil in place which is necessarily reduced as the oil is extracted. See *Anderson* v. *Helvering,* 310 U. S. 404, 407.

The taxpayers here involved were lessors. Under the leases and our previous decisions, these taxpayers had an economic interest, a capital investment, in so much of the extracted oil as was used by the lessee to pay to the taxpayers the royalties and bonuses. See note 3, *supra.* The taxpayer lessors were entitled to the depletion allowance on these royalties and bonuses whether they were paid to them in oil or cash, the proceeds of the oil. *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, 321.

---

[5] For the background of the present provisions, see *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312.

If the additional payment in these leases had been a portion of the gross receipts from the sale of the oil extracted by the lessees instead of a portion of the net profits, there would have been no doubt as to the economic interest of the lessors in such oil. This would be an oil royalty. The lessors' economic interest in the oil is no less when their right is to share a net profit. As in *Thomas* v. *Perkins,* 301 U. S. 655, their only source of payment is from the net profit which the oil produces. In both situations the lessors' possibility of return depends upon oil extraction and ends with the exhaustion of the supply. Economic interest does not mean title to the oil in place but the possibility of profit from that economic interest dependent solely upon the extraction and sale of the oil.[6]

The depletion allowance, in the aggregate, is always the same amount, 27½ per centum of the "gross income from the property."[7] "In the case of leases the deductions shall be equitably apportioned between the lessor and lessee." § 23 (m). An equitable apportionment is obtained by excluding from the lessee's gross income from oil or gas produced from the property, *Helvering* v. *Twin Bell Oil Syndicate, supra,* 321, "an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property." § 114 (b) (3).[8] Such deductions become the gross income of the lessor. We think these taxpayers had an economic interest in the oil, sufficient to support depletion on the sums received as net profit.

If we assume that the only payment for the privilege of oil extraction made to the taxpayer lessors by the lessees

---

[6] While the reservation of royalties shows an economic interest in the oil necessary for the satisfaction of the royalties, such reservation would not show an economic interest in oil not necessary for the payment of the royalties. But see *Estate of Japhet,* 3 T. C. 86.

[7] § 114 (b) (3). The gross income refers only to oil and gas. *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, 320–21; *Anderson* v. *Helvering,* 310 U. S. 404, 408.

[8] See *Helvering* v. *Twin Bell Oil Syndicate,* 293 U. S. 312, 322.

was the portion of "net income" paid under the leases, it would be clear that such payment of "net income" would taxwise be rent or royalty paid by the lessees for the privilege of extraction. Since § 114 (b) (3) would require the lessees to deduct this rent or royalty from their gross incomes from the sale of oil from the property before taking the lessees' depletion, a gross receipt from oil sold, equal to the amount of the "net income" paid to the taxpayer lessors, would not be subject to depletion, unless the taxpayer lessors are permitted to apply depletion to this payment. This would be contrary to the purpose of the depletion statute, which is to allow to the lessor and lessee together a depletion of $27\frac{1}{2}$ per cent of the gross sale price of the oil. On the other hand if depletion on the "net income" payments is allowed to the lessors, the lessees are allowed depletion on the gross income from oil sales less the net income payment and the entire allowable depletion is allocated between the lessors and lessees.

Reference is made to a sentence in *Anderson* v. *Helvering*, 310 U. S. 404, 409, as indicating that this Court had determined that "net profit" payments were not subject to depletion. It reads as follows:

"A share in the net profits derived from development and operation, on the contrary, does not entitle the holder of such interest to a depletion allowance even though continued production is essential to the realization of such profits."

The *Anderson* case involved the taxability to the oil operator of the gross proceeds of the oil, which his contract for the purchase of the oil property required him to turn over to the seller as a means of satisfying a deferred payment for the property. As the deferred payment also had to be satisfied out of any sale of the fee simple title to the land, we held the operator liable as a purchaser because the seller was not "entirely dependent"

upon the oil production for his purchase price. This gave the operator the benefit of the applicable depletion. Page 413. Only the reservation of an interest in the fee differentiated the *Anderson* case from *Thomas* v. *Perkins*, 301 U. S. 655, where deferred payment in oil or its proceeds, payable only from production, was held subject to depletion when paid to the assignors.

The part just quoted from the *Anderson* case occurs in setting out the series of cases dealing with depletion. No net income was involved in the *Anderson* case. The statement was supported by the citation of *Helvering* v. *O'Donnell*, 303 U. S. 370, and *Helvering* v. *Elbe Oil Land Co.*, 303 U. S. 372. In the *O'Donnell* case, the taxpayer, who received the "net income" from an oil operation, was a stranger to the lease, who had contracted for a share of its net profits as consideration for his stock in a corporation which was the owner of the lease. "The question is whether respondent had an interest, that is, a capital investment, in the oil and gas in place. . . . As a mere owner of shares in the San Gabriel Company, respondent had no such interest." Page 371. In the *Elbe Oil Land* case, there was a specific provision that consideration other than the "net profit" payment should result in "full ownership" to the buyer. The transaction which included the clause for "net profit" was a sale of all the right, title and interest in the property, which consisted of tangible personalty and drilling permits, agreements, and leases. This Court said the additional payment of a share of net profits did not qualify "in any way the effect of the transaction as an absolute sale." Page 375. Thus the *Anderson* case correctly stated that a share in "net profits," disassociated from an economic interest, does not entitle the holder to a depletion allowance. The facts of each transaction must be appraised to determine whether the transferor has made an absolute sale or has retained an economic interest—a capital investment.

In our view, the "net profit" payments in these cases flow directly from the taxpayers' economic interest in the oil and partake of the quality of rent rather than of a sale price. Therefore, the capital investment of the lessors is reduced by the extraction of the oil and the lessors should have depletion.

*No. 56 is reversed.*
*No. 197 is affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of these cases.

MR. JUSTICE DOUGLAS dissents.