WM. R. MURPHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY MURPHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4553, 4554. Promulgated February 28, 1946.

---

*John W. Snider, C. P. A.*, for the petitioners.
*Harold H. Hart, Esq.*, for the respondent.

**OPINION.**

ARUNDELL, *Judge*: The sole issue before us involves a determination of whether the petitioners have retained a capital investment in the oil in place so as to entitle them to a depletion allowance. As stated by the Supreme Court in *Helvering* v. *Elbe Oil Land Development Co.*,

303 U. S. 372, "The words 'gross income from the property', as used in the statute governing the allowance for depletion, mean gross income received from the operation of the oil and gas wells by one who has a capital investment therein,—not income from the sale of the oil and gas properties themselves." The applicable statute is set out in the margin.[1]

The respondent has taken the position that pursuant to the contract of May 22, 1937, the petitioners transferred all of their interest in the leaseholds, retaining no depletable economic interest in the oil or gas in place, and that the sums here in question received by the petitioners during the taxable years did not constitute gross income from the property, but were received as part of the sale price of the leaseholds. Petitioners, on the other hand, contend that they were the owners and holders of the original oil leases, having the ownership of the oil, and that the transaction entered into between the parties was a joint venture for the exploration and development of leases and the production of oil and/or gas thereon for the benefit of all the parties. Petitioners insist that the "operating agreement" was devised for the purpose only of providing for the more efficient and economical operation of the properties and that it did not serve to cause a relinquishment of their entire economic interest in the oil or gas in place. They argue that title to the property was held by Adams for the use and benefit of all concerned and that Adams occupied a position of trust to hold and manage the property, while all of the parties were to share in and have an interest in the oil if and when produced.

While the "operating agreement" states that all right, title, and interest in the leaseholds and the gas and oil produced therefrom is to be in Adams, a careful examination of the entire instrument, in the light of the circumstances surrounding its execution, clearly leads us to the conclusion that the instrument was not intended to and does not deprive petitioners of all economic interest in the leasehold estate. At its outset the agreement states that the owners of the leases in question desire to arrange for drilling tests for oil and for future operations in the event of the discovery of oil in commercial quantities. It speaks of the parties as the "operator" and the "non-operator." It speaks of a "joint account" and refers to the contract as a "venture"

---

[1] SEC. 114. [I. R. C.] BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

and to the leasehold interests as "joint lease." If the parties intended that the transaction be a sale of petitioners' economic interest in the leases, then the above and many other terms of the contract, such as "Adams shall at all times have the sole management of the sale of all the oil, gas and/or casinghead gas that may be produced  *  *  *"; "Adams shall be entitled to and shall receive the entire proceeds from the sale of said products"; and other similar provisions, would be meaningless. The arrangement, in our view, was designed to furnish a more simplified form of management and operation of the lease-holds. There were fifteen individuals owning different fractional interests in the various leases. Even prior to their entry into the contract here considered, legal title to the various interests was held by one person for the benefit of all. Such arrangement was carried through in the operating contract for ease of operations. The fact that Adams held legal title and the sole right to sell or dispose of the property is not controlling, for the right to the depletion allowance may inure to beneficial owners. *Helvering* v. *Falk*, 291 U. S. 183. Only taxpayers with an economic interest in the oil are entitled to depletion, *Palmer* v. *Bender*, 287 U. S. 551; *Thomas* v. *Perkins*, 301 U. S. 655, but, as is pointed out in *Burnet* v. *Harmel*, 287 U. S. 103, this means only that under his contract the taxpayer must look to the oil in place as the source of the return of his capital investment.

Relying upon the decision by the Fifth Circuit in *Commissioner* v. *Kirby Petroleum Co.*, 148 Fed. (2d) 80, the respondent makes much of the recital in the instrument that petitioners are entitled only to one-fourth of the net profits from the enterprise and not to one-fourth of the oil produced. It is apparent that the parties designed the agreement to make sure that the expenses of operation and production would be deducted from the income thereof before any distribution was made. Such procedure was adopted in lieu of having the payments for the oil made directly to the interested parties and thus necessitating the collection from them of their proportionate part of the operating expenses and costs of production. In its recent decision reversing the decision of the Fifth Circuit in the *Kirby* case, *supra*, and affirming the decision of the Ninth Circuit in *Commissioner* v. *Crawford*, 148 Fed. (2d) 776, the Supreme Court held that an economic interest in the oil is not lost merely because the right is to share a net profit. *Kirby Petroleum Co.* v. *Commissioner*, 326 U. S. 599.

The only payment for the right of extracting the oil to be made by Adams to the petitioners was a portion of the net profits to be derived from the sale of the oil. Such payment was dependent entirely upon the sale of the oil and it would end only upon the exhaustion of the supply. It seems clear that the payments here in question should be

regarded as rents or royalties paid for the extraction of oil which resulted in a reduction of petitioners' capital investment. *Kirby Petroleum Co.* v. *Commissioner, supra.* Accordingly, we conclude that the petitioners are entitled to a depletion allowance.

*Decisions will be entered under Rule 50.*