WILLIAM D. GRAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FANNIE M. GRAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. J. WOLFE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NONA HOBBS WOLFE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17952, 17953, 17954, 17955. Promulgated August 26, 1949.

266

*Russell Scott, Esq.,* and *Thad T. Hutcheson, Esq.,* for the petitioners.
*L. R. Van Burgh, Esq.,* and *D. Louis Bergeron, Esq.,* for the respondent.

268

270

## OPINION.

JOHNSON, *Judge*: Petitioners contend that the assignments of the oil and gas leases by them through Gray & Wolfe to La Gloria Corporation were sales of such leases, and, since they were made for the

same cash consideration as Gray & Wolfe had paid for them, there was no gain or profit realized from the transactions, and hence no taxable income.

Respondent, on the other hand, contends that such transactions were not sales, but subleases, and that the cash consideration received therefor by Gray & Wolfe was in the nature of a bonus or advanced royalty and hence constitutes ordinary income, taxable as such and subject to the statutory depletion allowance.

In transactions of this kind for Federal income tax purposes the form of the instrument of transfer and its effect on the title to the oil and gas under local law are not decisive, but the determinative factor is whether or not the transferor has retained an economic interest to the minerals in place. If so, the transaction will not be regarded as an outright sale, but in the nature of a sublease, and payments thereunder, both royalties and bonus payments for the lease, are to be considered in the nature of rentals or ordinary income, and taxable as such. *Burton-Sutton Oil Co.* v. *Commissioner*, 328 U. S. 25; *Kirby Petroleum Co.* v. *Commissioner*, 326 U. S. 599; *Thomas* v. *Perkins*, 301 U. S. 655; *Burnet* v. *Harmel*, 287 U. S. 103.

The leases in question cover two minerals, oil and gas. As to these minerals, Gray & Wolfe in their assignments of the leases retained a different interest as to each. As to oil, there was excepted and reserved to Gray & Wolfe "one-fifth of all oil produced and saved from the premises." Under the authorities cited this reservation undoubtedly constituted a retention of an economic interest in the oil in place. But petitioners seek to eliminate oil from consideration of the issue here involved and predicate it alone upon the question of whether or not there was an economic interest retained in the gas and gas rights. They contend that all of the cash consideration paid for the leases and all cash received for the transfer thereof are allocable to gas and gas rights alone, since the oil rights had no substantial or commercial value, and that the moving consideration, both in the purchase and transfer of the leases, was exclusively with reference to gas and gas rights.

While there is some evidence to this effect, we do not deem it necessary to discuss or pass thereon, since even if petitioners' contention in this regard be correct, under the holding in *Burton-Sutton Oil Co.*, *supra*, and the cases there cited and reviewed, we think that Gray & Wolfe here retained an economic interest in the gas in place and hence the Commissioner's determination must be sustained.

Petitioners earnestly contend that as to gas there was no reservation of an economic interest. Instead of an economic interest they claim that after the assignment and contract the interest of the partnership in the gas was "a mere economic advantage derived from production"

which arose solely "through a contractual relation to the owner." The quoted language sought here to be applied the petitioners took from a paragraph of a Treasury regulation,[4] wherein it is declared that under circumstances there detailed an economic interest in the mineral deposit would not exist.

The quoted sentence from the regulations relied upon by petitioners is inapplicable here. It provides that a person who has no capital investment in the mineral deposit does not possess an economic interest therein merely because through a contractual relation with the owner he possesses a mere economic advantage derived from production. Its meaning is illustrated in the next succeeding sentence of the regulations, which reads:

* * * Thus, an agreement between the owner of an economic interest and another entitling the latter to purchase the product upon production or to share in the net income derived from the interest of such owner does not convey a depletable economic interest.

An apt and concrete illustration of its meaning is found in *Helvering* v. *O'Donnell*, 303 U. S. 370, where the taxpayer, who received net income from an oil operation was a stranger to the lease who had contracted for a share of its net profits as consideration for his stock in a corporation which was the owner of the lease.[5] The Supreme Court said:

The question is whether respondent had an interest, that is, a capital investment, in the oil and gas in place. * * * As a mere owner of shares in the San Gabriel Company, respondent had no such interest.

In the instant case petitioners are not strangers to the leases; by investment they acquired ownership of them and the minerals covered thereby, including gas, and in their assignment of them a reservation was made as to gas which in effect was one-fifth of the net profits:

* * * derived from the sale of gas, casinghead gas and residue gas produced from the leases herein assigned and from the sale of natural gasoline, condensate and other products separated or extracted from gas produced from said leases. * * *

This is substantially the same form of reservation as was made in *Kirby Petroleum Co., supra,* where the lessor in an oil and gas lease retained "20 per cent of the net money profits realized by the lessees from their operations under the lease," and also in *Burton-Sutton Oil Co., supra,* where the assignment of a mineral lease required the grantee to pay the grantor "50 per cent of the proceeds of the oil produced and sold from the land, deducting from the proceeds certain itemized expenses of the producer," which expenses the Supreme Court

---

[4] Regulations 111, sec. 29.23 (m)–1.
[5] This analysis of the facts in the *O'Donnell* case is taken from the opinion of the Supreme Court in *Kirby Petroleum Co.* v. *Commissioner,* 326 U. S. 599, at page 606.

said "are so general in character that it may be said fairly that the lessor was to receive 50 per cent of the net from operations."

In each of these cases the Supreme Court held that the reservation constituted a retention of an economic interest in the minerals in place. In the *Kirby* case depletion allowance was the issue, and it was held that the taxpayer was entitled to depletion on the 20 per cent profits paid him by the lessees, the Court concluding its opinion thusly:

> In our view, the "net profit" payments in these cases flow directly from the taxpayers' economic interest in the oil and partake of the quality of rent rather than of a sale price. Therefore, the capital investment of the lessors is reduced by the extraction of the oil and the lessors should have depletion.

In the *Burton-Sutton* case the issue was whether or not the transfer of the lease was a sale, and notwithstanding that the instrument recited the transaction to be a sale and contained the language usually incident thereto, the Supreme Court held that it could not be construed as a sale, but an assignment to exploit the property, with a reservation of an economic interest in the oil.

Petitioners contend that the *Burton-Sutton Oil Co.* case is not applicable because it was here agreed that if La Gloria Corporation (transferee of the leases) "elects to organize a corporation to erect and operate a processing and cycling plant to process the gas produced from said leases" petitioners were to have, without cost to them, 20 per cent of the common stock of the corporation. This, they say, removed it from the realm of subleasing cases such as *Burton-Sutton*, and they quote from the Supreme Court's opinion therein this sentence:

> It is the lessor's, lessee's or transferee's "possibility of profit" from the use of his rights over production, "dependent solely upon the extraction and sale of the oil," which marks an economic interest in the oil.

Petitioners, they say, took in return for the gas rights "a net profit interest in a business venture—the business of erecting, operating and maintaining a recycling plant." The record reveals that there was no definite commitment on the part of either party to the contract to organize a corporation or to install a recycling plant. All reference thereto was contingent and purely optional, and there was nothing in the record which required the erection of such a plant.

The assignments of the leases here in question were not qualified or conditioned upon the erection of a recycling plant, and the retention of 20 per cent of the net profits from the gas and its products produced from the leases was definite and without regard thereto. It is not believed that this contingent and optional agreement will in any way affect the economic interest retained by petitioners to the gas in place.

By alternative assignments of error, petitioners attack as insufficient the amounts of the depletion deductions allowed by respondent. They

also claim that he should have allowed "a loss due to the worthlessness of the partnership's interest in future profits to be derived from natural gas production." But, as these assignments are not discussed or mentioned in petitioners' opening or reply briefs, we assume that they are abandoned.

*Decisions will be entered for the respondent.*