John R. SHOEMAKE and Dorothy I. Shoemake, Appellants,

v.

UNITED STATES of America, Appellee.

No. 6250.

United States Court of Appeals Tenth Circuit.

June 7, 1960.

O. J. Connell, Jr., El Dorado, Kan., and William Porter, Wichita, Kan. (Getto McDonald, William Tinker, Arthur W. Skaer, Jr., Hugh P. Quinn, Alvin D. Herrington, Darrell D. Kellogg, Richard T. Foster, Wichita, Kan., on the brief), for appellants.

Grant W. Wiprud, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, John J. Pajak, Attys., Dept. of Justice, Washington, D. C., Wilbur G. Leonard, U. S. Atty., Topeka, Kan., and George E. Peabody, Asst. U. S. Atty., Washington, D. C., on the brief), for appellee.

Before MURRAH, Chief Judge, and BRATTON and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appellants-taxpayers seek an income tax refund from the government for amounts paid under protest as the result of deficiency assessments for the years 1948 through 1955. The assessments arose as the result of the disallowance of claimed depletion credit taken by taxpayers on sales of crude oil during the tax years. This appeal probes the single question of whether or not taxpayers are entitled to an allowance for depletion within the purview of applicable provisions of the internal revenue code.[1] The trial court ruled that the taxpayers had no depletable interest in the oil. D.C., 176 F.Supp. 746.

The claim for refund is premised upon agreements entered into by taxpayers with numerous operators who produce oil in the vicinity of Butler County, Kansas, and adjoining counties. The oil pumped by the operators is often temporarily stored in tanks preparatory to its sale to pipelines, the storage causing a small percentage of oil which is emulsified with water to settle to the tank bottom. This contaminated concentrate is not marketable and when it accumulates to a depth approaching the height of the tank cut-off valve it must be removed from the tank to avoid general contamination of the stored oil. Upon receiving notice from an operator that a particular tank must be cleared taxpayers draw off the tank bottom by means of suction and haul the impure oil to processing plants owned and operated by them near Eldorado and in Eureka, Kansas. Through treatment by heat and chemicals, taxpayers reclaim the crude oil and, in turn, sell the purified crude to pipeline companies. It is upon these sales that taxpayers assert the right to apply depletion allowances.

▮▮ It seems clear that the operations of taxpayers do not meet either the spirit or letter of allowable depletion in the production of oil.[2] Stated bluntly, taxpayers do nothing more than clean the operators' storage tanks in considera-

1. Internal Revenue Code of 1939, § 114 (b) (3) *"Percentage depletion for oil and gas wells.*—In the case of oil and gas wells the allowance for depletion under section 23(m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph." 26 U.S.C.A. § 114. To the same effect see Internal Revenue Code of 1954, Sec. 613, 26 U.S.C.A. § 613.

2. "The purpose of the deduction for depletion is plain and has been many times declared by this Court. [It] is permitted in recognition of the fact that the mineral deposits are wasting assets and is intended as compensation to the owner for the part used up in production. Helvering v. Bankline Oil Co., 303 U.S. 362, 366 [58 S.Ct. 616, 618, 82 L.

Ed. 897]. And see United States v. Ludey, 274 U.S. 295, 302 [47 S.Ct. 608, 610, 71 L.Ed. 1054]; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 375 [58 S.Ct. 621, 622, 82 L.Ed. 904]; Anderson v. Helvering, 310 U.S. 404, 408 [60 S.Ct. 952, 954, 84 L.Ed. 1277]; Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 603 [66 S.Ct. 409, 411, 90 L.Ed. 343]. [The depletion] exclusion is designed to permit a recoupment of the owner's capital investment in the minerals so that when the minerals are exhausted, the owner's capital is unimpaired. Commissioner [of Internal Revenue] v. Southwest Exploration Co., 350 U.S. 308, 312 [76 S.Ct. 395, 100 L.Ed. 347]. Save for its application only to gross income from mineral deposits and standing timber, the purpose of the deduction for depletion does not differ from the deduction for depreciation. United States v. Ludey, 274 U.S. [295] at page 303, 47 S.Ct. [608], at page 611 [71 L.Ed. 1054]. In short, the purpose of the depletion deduction is to permit the owner of a capital interest in mineral in place to make a tax-free recovery of that depleting capital asset." Parsons v. Smith, 359 U.S. 215, 220, 79 S.Ct. 656, 660, 3 L.Ed.2d 747.

tion of being allowed the tank settlings. The agreements with the operators reach no higher than an exchange of service for a waste material which the taxpayers through their own independent processing can salvage profitably. Taxpayers have no interest in the oil in place, make no capital investment in the production, have no right to continued production and obtain an interest in the oil only at such time as the operators designate. An economic advantage obtained by contract although dependent upon production does not constitute a depletable economic interest. Treasury Regulations 118, Section 39.23 (m)-1, 26 C.F.R. § 39.23 (m)-1.

Although the most obvious right to depletion arises from an investment in the oil in place such vested right in the mineral in place is not the exclusive basis for allowable depletion. In Kansas, as in many jurisdictions, an oil and gas lease does not create a present vested interest in potential or actual minerals in place. The lease is considered as personalty and production is necessary to perfect title to the oil. Riverview State Bank v. Ernest, 10 Cir., 198 F.2d 876, 34 A.L.R.2d 892, certiorari denied 344 U.S. 892, 73 S.Ct. 212, 97 L.Ed. 690. It follows that taxpayers' contention will not fail simply because, as here, they have no interest in the oil in place. But absent an interest in the oil in place, depletion is allowable only when a capital investment in production is returnable from the extraction of oil. Commissioner of Internal Revenue v. Southwest Expl. Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347. Here, although taxpayers' investment is dependent upon production for profit, the investment is in a processing plant and they obtain an economic advantage from production, not an economic interest in production. Should any of the producers from whom taxpayers presently obtain tank settlings become non-producers, taxpayers' investment would become no less valuable if substitution of supply was available. Depletion is a particularized allowance and not applicable to dependence upon a supply of the mineral in general. The tax-payers' interest must be in the producing wells, not in source of supply. This principle was recognized by the Supreme Court in Helvering v. Bankline Oil Co., 303 U.S. 362, 367, 58 S.Ct. 616, 618, 82 L.Ed. 897, under facts remarkably similar to those we consider. That court expressed it thus:

"It is plain that, apart from its contracts with producers, *respondent had no interest in the producing wells or in the wet gas in place.* Respondent is a processor. It was not engaged in production. Under its contracts with producers, respondent was entitled to a delivery of the gas produced at the wells, and to extract gasoline therefrom, and was bound to pay to the producers the stipulated amounts. Some of the contracts, reciting that the producer was the owner of the gas produced, provided for its treatment by respondent. Other contracts were couched in terms of purchase. In either case the gas was to be delivered to respondent at the casingheads or gas traps installed by the producer. Respondent had the right to have the gas delivered, but did not produce it and could not compel its production. * * * As the Board of Tax Appeals said, 33 B.T.A. 910: 'it is safe to say, we believe, that this petitioner [respondent] had no enforceable rights whatsoever under its contracts prior to the time the wet gas was actually placed in its pipe line, i. e., after it had passed beyond the casingheads and gas traps supplied by the *producer into* the pipe line, except the right, perhaps, to demand that the producer deliver whatever was produced through its pipe lines for treatment during the period of contractual relationship.'

"Undoubtedly respondent through its contracts obtained an economic advantage from the production of the gas, but that is not sufficient. The controlling fact is that respondent had no interest in the gas in

place. Respondent had no capital investment in the mineral deposit which suffered depletion, and is not entitled to the statutory allowance." (Emphasis added.)

The judgment is affirmed.