Colby G. TURNER and Dorothy R.
Turner, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 7–174.

United States District Court
D. Maine, S. D.

March 3, 1964.

Willis A. Trafton, Jr., Auburn, Me.,
for plaintiffs.

Alton A. Lessard, U. S. Atty., Port-
land, Me., David A. Wilson, Jr., Chief,
Refund Trial Section No. 1, Tax Div.,
Dept. of Justice, Washington, D. C., for
defendant.

GIGNOUX, District Judge.

This is an action for refund of federal
income taxes for the years 1960 and
1961. The only question for decision at
this time is whether amounts received
by plaintiffs under a contract permitting
the removal of sand and gravel from
their land constituted ordinary income or
capital gain to the taxpayers.

The relevant facts may be briefly stat-
ed: At all pertinent times, the plaintiff
Colby G. Turner owned a gravel pit in
Auburn, Maine, which contained mixed
deposits of sand and gravel. By an in-
denture dated May 8, 1958 he leased the
pit to G. A. Peterson Co. for a term of
eight years, with an option to renew for
an additional ten-year period. Under the
lease Peterson acquired the exclusive
right to excavate and remove sand and
gravel from the pit, in return for which
it agreed to pay Turner, as rental, a fixed
sum per cubic yard for the materials it
extracted.[1] Peterson paid Turner, $9,-

---

1. The lease sets out the terms of payment
as follows:

"The Lessee agrees to pay to the Les-
sor, as rental, the sum of fifteen cents per
cubic yard for all sand and gravel taken

out of said pit for concrete and other pur-
poses, or used by the Lessee in the manu-
facture of concrete products, also the sum
of fifteen cents per cubic yard for all
stone or crushed stone delivered out of

841.66 in 1960 and $10,896.13 in 1961 for sand and gravel removed pursuant to the agreement. In their joint tax returns for the years in question, plaintiffs reported these amounts as ordinary income and paid taxes accordingly. They now seek refunds on the ground that the contract payments should have been reported as long-term capital gains.

A long line of Supreme Court decisions has established the principles of law applicable to the taxation of receipts from the extraction of mineral deposits. They make it clear that if Turner had an "economic interest" in the sand and gravel at the time it was excavated, then the payments by Peterson are taxable as ordinary income. But if, on the other hand, Turner had no "economic interest" in the materials at that time, the payments are taxable as capital gain. Burnet v. Harmel, 287 U.S. 103, 53 S. Ct. 74, 77 L.Ed. 199 (1932); Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L. Ed. 489 (1933); Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940); Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 66 S.Ct. 409, 90 L.Ed. 343 (1946); Burton-Sutton Oil Co. v. Commissioner, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062 (1946); Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956); Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959). "Economic interest" means a "possibility of profit" which is "dependent solely upon the extraction and sale" of the minerals. Kirby Petroleum Co. v. Commissioner, supra at 604; Burton-Sutton Oil Co. v. Commissioner, supra at 34–35. Whether a transaction is technically a lease or a sale is not necessarily significant in determining whether or not the taxpayer had an "economic interest" in the minerals. Burton-Sutton Oil Co. v. Commissioner, supra at 32; Palmer v. Bender, supra at 557. The applicable law is succinctly stated in Laudenslager

v. Commissioner, 305 F.2d 686, 690–691 (3d Cir. 1962):

"The test for determining whether the proceeds of a given transaction constitute ordinary income or capital gain is known as the 'economic interest' test and has evolved from the inter-relationship between the capital gains provisions of the revenue laws and the provisions authorizing depletion allowance. Where the owner of the land retains an economic interest in the deposits, the transaction is regarded as a lease and the proceeds are taxable as ordinary income, subject, under certain conditions, to a deduction for depletion. Conversely, where the owner does not retain an economic interest, the transaction is regarded as a sale and, assuming that the transaction otherwise qualifies for capital gain treatment, the proceeds are taxable as capital gain. The owner has retained an economic interest if he has acquired, by investment, any interest in the natural deposit in place, and has secured, by any form of legal relationship, income derived from the extraction of the deposit, to which he must look for a return of his capital. The determination of whether an economic interest has been retained is not dependent upon the label that is given to the transaction by the parties or by the local law, nor is it dependent upon the owner's retention of title or any particular form of legal interest in the deposit. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933); Gowans v. Commissioner, 246 F.2d 448 (9 Cir. 1957); 4 Mertens, Federal Income Taxation § 24.57 (1960)."

In the application of these principles to the present case, the decision of the Court of Appeals for this Circuit in

said pit, providing, however, the sand used with it comes from said pit; the sum of nine cents per cubic yard for all gravel or fill and stonedust used for road base or other purposes delivered out of said pit. All material from these pits shall be reckoned according to truck measurement."

Linehan v. Commissioner, 297 F.2d 276 (1st Cir. 1961) is controlling. In that case, as here, the taxpayer granted to a sand and gravel company the exclusive right to excavate sand and gravel from the taxpayer's property at a fixed price per cubic yard. The court held that the "taxpayer had no 'economic interest' in the material taken from his property after its severance, for in every instance he sold sand and gravel for fixed prices per cubic yard without reference to the prices received or the profits, if any, made by the exploiters." at 279 (footnote omitted). In this respect, the court found the case before it to be "clearly distinguishable" from Albritton v. Commissioner, 248 F.2d 49 (5th Cir. 1957), in which payment for the excavated sand and gravel was based on a percentage of the retail sales price of the excavated materials. The court in Linehan accordingly concluded that the payments involved constituted capital gains and should be taxed as such. Accord, Crowell Land & Mineral Corp. v. Commissioner, 242 F.2d 864 (5th Cir. 1957). Contra, Laudenslager v. Commissioner, supra.

The Government contends that the facts in the present case are significantly different from those in Linehan, because the Linehan contracts prescribed fixed elevations below which sand and gravel was not to be removed. However, the court in Linehan laid no stress upon this provision, nor can this Court attribute to it the significance which the Government urges.[2] It is evident from a reading of the Linehan opinion that the court based its conclusion that the taxpayer had no "economic interest" in the minerals taken from his property upon the ground that the contract payments were based upon fixed prices per cubic yard, rather than upon a percentage of the lessee's resale price or profit. The present case is not distinguishable from the Linehan case in this respect.

2. The Linehan contracts imposed no obligation upon the gravel company to remove any amount of the sand and gravel which constituted the subject matter of the agreements. Compare Gowans v.

On the authority of Linehan it must be held that the amounts received by Mr. Turner for the materials excavated under his contract with Peterson are taxable to plaintiffs at capital gain rates.

Commissioner, 246 F.2d 448 (9th Cir. 1957). The contracts are fully set forth in the opinion of the Tax Court below. See Charles A. Linehan, 35 T.C. 533, 536–39 (1960).