Ralph S. GITZINGER and Loretta C. Gitzinger, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3050.

United States District Court
S. D. Ohio, W. D.
March 22, 1967.

Hugh E. Wall, Jr., of Coolidge, Wall & Wood, Dayton, Ohio, for plaintiffs.

Roger Makley, Asst. U. S. Atty., for defendant.

FINDINGS OF FACT
CONCLUSIONS OF LAW
JUDGMENT

WEINMAN, Chief Judge.

The plaintiffs, Ralph S. Gitzinger and Loretta C. Gitzinger, own a large tract of land lying on the boundary between Greene and Montgomery Counties in southern Ohio. This farm was inherited by the wife, Loretta C. Gitzinger, in the year 1941 and it includes a 35-acre limestone deposit.

In 1954 there was a corporation formed called Valley Stone Products Company to exploit this limestone deposit. A relatively insignificant amount of limestone was quarried, stockpiled and sold to "cash and carry" customers, which stone was used for driveway purposes. The corporation was composed of Gitzinger and two associates, without a quarrying background, and within a year, the operation was terminated. Plaintiffs did not receive any consideration for the limestone quarried, nor were any funds paid to Mr. Gitzinger as an officer of the corporation. There was no evidence that the limestone was held primarily for sale to customers in the normal course of business that would in any way, after the year 1955, be considered as a continuation of that business.

Sometime thereafter, these taxpayers were approached by a representative of the Universal Atlas Cement Company, a division of United States Steel Corporation, which has a large cement plant nearby. When contacted by this corporation, the individual stated to Mr. Gitzinger "we want to buy your rock". An option on the limestone deposit was given to Atlas permitting the taking of core borings to determine the extent and quality of the Gitzinger limestone deposit. The results of this geological exploration were satisfactory, and at the meeting of Atlas officials and Gitzinger and

their respective attorneys, the Atlas attorney again told Gitzinger that Atlas wants to "buy your rock" and "will take it all". The negotiations concerning the remunerative aspects of this sale and the actual drafting of the agreement were left to the attorneys for Atlas. The agreement as drafted by Atlas' attorneys was made tax-wise favorable to the Atlas Corporation.

Gitzinger was a trucker by business since the year 1952 and only had an eighth grade education. The agreement was couched in terms of a lease. It gives Atlas the right to occupy the premises and quarry and remove therefrom all limestone which Atlas considered suitable for cement making purposes. Atlas undertook to pay a minimum of $10,000 per year over a 10-year period to remove 100,000 tons of limestone annually. Tonnage in excess of 100,000 tons was to be paid for on a reduced basis.

To enable Gitzinger to liquidate his old Valley Stone indebtedness, Atlas advanced to him $20,000 against which each year there was charged the tonnage in excess of 100,000 tons until the advance finally was offset in the early 1960's.

The Atlas contract provided for payment at 10¢ per ton for the first 100,000 tons per year, 8¢ per ton for the next 100,000 tons, and 6¢ per ton for limestone extracted in excess of 200,000 tons annually. The purpose of establishing this sliding scale was to encourage the expeditious removal of the limestone deposit by Atlas.

The agreement further provided that after Atlas had extracted 1,000,000 tons of limestone, it would have an option to purchase the property at any time within 90 days for an additional $100,000. Atlas already had removed the 1,000,000 tons minimum quantity and it had permitted the option to purchase to expire. Atlas was continuing to extract limestone at the rate established in the original agreement.

The Commissioner of Internal Revenue has determined that payments received by the taxpayers under the Atlas agreement are taxable as ordinary income and subject to a depletion allowance. The Commissioner asserts that since the agreement between the Gitzingers and Atlas is drawn in the form of a lease, and since the payments thereunder are termed "royalties", the income derived by the taxpayers therefrom is taxable as ordinary income and are not entitled to capital gains treatment.

Plaintiffs contend that they have retained no economic interest in the limestone excavated and removed by Atlas, and further that it is the substance of the agreement between plaintiffs and Atlas and not its technical form which is controlling making this a capital gains transaction. The Court agrees with the plaintiffs in respect to these two conclusions.

The Government has rested its case primarily upon the terms of the lease agreement between these parties and the Court from all of the evidence present is determining this question upon the intention of the plaintiffs herein in disposing of this limestone mineral deposit.

■ It is the substance of the agreement between plaintiffs and Atlas and not its technical form which is controlling. In construing an agreement such as the one between plaintiffs and Atlas, the technical form utilized is not determinative. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Palmer v. Bender, 287 U.S. 551, 555, 53 S.Ct. 225, 77 L.Ed. 489. Whether a transaction technically is a lease or sale is not necessarily significant in determining whether or not plaintiffs had a retained "economic interest" in the minerals after severance. This rule was well stated in the Linehan v. Commissioner of Internal Revenue case, 1 Cir., 297 F.2d 276—

"We do not gather * * * that decision in cases like this turns entirely upon whether a given transaction between a landowner and his grantee of the right to exploit mineral deposits on his land is technically a lease or a sale. Whether a given transaction is

clearly one or the other may be indicative of the result but is not necessarily determinative.

\* \* \* \* \* \*

"[C]ases like this do not turn upon the use of words alone unless it is abundantly clear that the words used by the parties were chosen with precision and accurately reflect this intention and the 'true substance' of the transaction entered into between them."

There is a more recent case pertaining to the form of a gravel pit agreement, which is the case of Freund v. United States decided by the Seventh Circuit Court on October 12, 1966, and reported in 367 F.2d 776.

"Form of agreement between taxpayer and another is not of itself determinative of question of whether payments to taxpayer should be treated as ordinary income or capital gains; taxation is a practical matter that looks to substance of a transaction and not to its formal phraseology or to its legal characterization under local law.

\* \* \* \* \* \*

"Our examination of the authorities cited convinces us that with respect to contracts concerning the extraction of minerals the right to capital gain treatment as opposed to a depletion allowance requires that the facts of the particular transaction be appraised to determine whether the transferor has made an absolute sale or has retained an economic interest. Kirby Petroleum Co. v. Commissioner of Internal Revenue, 326 U.S. 599, 66 S.Ct. 409, 90 L.Ed. 343; Albritton v. Commissioner of Internal Revenue, 5 Cir., 248 F.2d 49."

 The test for determining whether or not the proceeds of a given transaction constitute ordinary income or capital gain is known as the "economic interest" test. Where the owner of land retains an economic interest in mineral deposits the transaction is regarded as a lease and the proceeds are taxable as ordinary income, subject under certain conditions to a deduction for depletion. Conversely, where the owner makes a complete and immediate conveyance of all of his interest in those minerals and no economic interest in the minerals is retained, the transaction is regarded as a sale and, assuming that the transaction otherwise qualified for capital gains treatment, the proceeds are taxable as capital gains. Laudenslager v. Commissioner of Internal Revenue, 305 F.2d 686 (C.A.3d); Green v. Commissioner of Internal Revenue, 35 T.C. 1065; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225.

 The landowner is said to have retained an economic interest after severance when the amount which he will receive still is undetermined at the time of severance and is dependent upon subsequent happenings, such as the resale price of the mineral in the exploiter's hands, the exploiter's net profits and the like. The clearest statement of the circumstances under which a landowner will be considered as not having a retained economic interest following severance is found in the dissenting opinion of Judge Murdock, of the Tax Court, in Linehan v. Commissioner of Internal Revenue, 35 T.C. 533, which subsequently was incorporated verbatim in the opinion of Chief Judge Woodbury, of the First Circuit Court of Appeals, which reversed the Tax Court (297 F.2d 276, CCA-1-1961). Judge Woodbury described, as putting "the matter in a nut shell", Judge Murdock's words:

"The petitioner sold the material for a fixed price per unit removed. Nothing was to vary that price or the vendee's obligation to pay it. Petitioner was in no way to benefit from the removal of the material, except by the payment of a fixed price per unit. Particularly, he was not to share in any profit or income derived by the vendee from the removal of the material. It should be held on these facts and on the authority of the prior opinions that the gain here involved should be taxed at capital gains rates."

In *Linehan*, the taxpayer owned a 17-acre tract of land containing deposits of

sand and gravel. An agreement was entered into with a nearby sand and gravel company, whereby the latter excavated sand and gravel from the taxpayer's property at a fixed price per cubic yard down to a specific elevation above sea level. Subsequently, and after termination of the first agreement, the taxpayer entered into similar agreements with a construction company for the extraction of sand and gravel to be used in work being done on a nearby airport. The contracts spoke in terms of exclusive rights to remove sand and gravel at a fixed price per cubic yard. After completion of the contracts, further deposits of sand and gravel remained on the taxpayer's property. The Court looked to the substance of the agreement between the parties and properly determined that it was evident that the taxpayer had no economic interest in the material taken from his property after its severance, for in every instance he sold sand and gravel for fixed prices per cubic yard without reference to the prices received, or the profits, if any, made by the exploiters.

We must never forget that by the removal of this limestone deposit the land does not return to the owner as farm land but as the evidence shows, the remainder consists of 30 acres of a big hole—20 feet deep. It is clear that these excavating operations cause this acreage to be of no practical value and the rehabilitation of these 30 acres is impossible.

It is the finding of this Court that it was the intention of Ralph and Loretta Gitzinger to sell this limestone deposit for the greatest available remunerative return. They should not be penalized because the Atlas Company tax-wise treats the agreement as a lease. It is the substance of the agreement between the parties and not the form which must control and the substance of the agreement here was the sale of minerals in place.

The Court finds that the amounts received by plaintiffs from Atlas are to be considered as gains from the sale of a capital asset and taxable at capital gains rates pursuant to Sections 1231(a) and (b) and 1201(b) of the Internal Revenue Code.

Judgment granted for plaintiffs against the defendant for $1,406.68 on their first cause of action; for $1,088.34 on their second cause of action; for $866.65 on their third cause of action; and for $766.66 for their fourth cause of action, together with added statutory interest thereon and their costs herein.