A. W. DEAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73621. Promulgated January 24, 1934.

*C. G. Tilman, Esq.*, for the petitioner.
*O. W. Swecker, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency in the petitioner's income tax for 1931 in the amount of $249.19. However, only $111.27 of the total deficiency is in controversy. The error assigned is, " Respondent has incorrectly computed the earned income credit in the determination of the alleged deficiency." The parties have filed a stipulation of facts in which all necessary factors for the computation of the petitioner's income tax liability for 1931 are set forth. There is no dispute as to any of these items. A part of the stipulation is that during the calendar year 1931 the petitioner sustained a " capital net loss " in the amount of $13,590.70. Attached to the stipulation are computations setting forth separately the computation of the respondent and the computation of the petitioner. Apparently no tax was shown to be due on the return, for each computation shows that no tax has been assessed, and the deficiency shown by each computation is the same therein as the " net tax liability " of that particular computation.

The assignment of error is misleading, for the difference between the parties is not in the computation of the earned income credit. On the contrary, the parties have entirely different methods of computing the petitioner's tax liability. The respondent computes the lia-

bility without regard to the provisions of section 101, whereas the petitioner's method is to compute a partial tax upon the basis of the ordinary net income at the rates and in the manner as if section 101 had not been enacted, and to subtract therefrom 12½ per centum of the capital net loss in order to arrive at the total tax. The respondent concedes the mathematical correctness of the petitioner's computation. The amount which the petitioner arrives at as the total tax is less than the tax computed without regard to the provisions of section 101. The respondent relies upon the following provision in the latter part of the section 101 (b) : " but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section." The respondent contends that the larger tax which he has computed without regard to the provision of section 101 is the deficiency. Thus, the real difference between the parties is whether the tax computed without regard to the provisions of section 101 is less than the total tax computed in accordance with the provisions of section 101 (b). The petitioner contends that the word " tax " in the quoted portion of 101 (b) means the total of normal and surtaxes, whereas the respondent contends that it means the net amount arrived at by completing the computation provided by the statute, that is, by reducing the total of normal and surtax by any credits to which the taxpayer is entitled, including the credit for earned income. If the respondent's contention is correct, the deficiency as determined by him is correct. If, however, the petitioner is correct, the correct deficiency is the amount of $137.92.

We do not agree with the petitioner in his interpretation of the latter part of section 101 (b) of the Revenue Act of 1928. In our opinion that provision means that in no event shall the amount which a taxpayer is required to pay as his tax be less than the amount which he would have been required to pay had section 101 never been enacted. The " tax ", as we understand it, is the tax liability of the taxpayer for the year involved, after a complete computation of that tax liability in accordance with the statute, including the subtraction necessary to give the taxpayer the benefit of a credit for earned income and of any other credit to which he may be entitled. Thus, the tax is the amount shown to be due on a correct and proper return.

The Commissioner has so interpreted the provision ever since it first appeared in the Revenue Act of 1924. The legislative history of section 101 (b) supports this view. Capital gain provisions first appeared in section 206 of the Revenue Act of 1921. The purpose of that section, as stated by the legislators, was to relieve from tax in the high brackets the gain from the sale of assets which had been held for some time. House Report No. 350, Ways and Means Com-

mittee, 67th Cong., 1st sess., on the Revenue Bill of 1921, p. 10. See also *Burnet* v. *Harmel*, 287 U.S. 103. The statute gave the taxpayer an election which permitted him to choose whether his capital net gain should be separately taxed at 12½ percent, or whether it should be taxed along with his other income in the usual way. There was no provision in that statute for capital net losses. The provision relating to capital net losses, in substantially the same form as it appeared in the 1926 and 1928 Acts, was first enacted as subsection (c) of section 208 of the Revenue Act of 1924. It appeared in the House bill. The Ways and Means Committee Report stated in regard to this subsection:

> There is no provision of the existing law which corresponds to this subdivision. This provides that the amount by which the tax is reduced on account of a capital loss shall not exceed 12½ per cent of the capital loss. If the amount by which the tax is to be increased on account of capital gains is limited to 12½ per cent of the capital gain, it follows logically that the amount by which the tax is reduced on account of capital losses shall be limited to 12½ per cent of the loss.

The Senate struck out this provision. The report of the Finance Committee gives this explanation:

> Such a provision would have resulted in an individual being liable to pay an income tax, although the total of his losses during the taxable year exceeded the amount of his income. Since this result is deemed to be undesirable, the subdivision has been stricken out of the bill as reported.

The Senate receded, however, and the provision was enacted as part of the Revenue Act of 1924. For further discussion see the statement of Mr. Green, Chairman of the Ways and Means Committee, vol. 65, Cong. Rec., part 3, 68th Cong., 1st sess., p. 2428. See also *Piper* v. *Willcuts*, 64 Fed. (2d) 813; affirming 55 Fed. (2d) 397. Clearly this legislation in regard to capital net losses was not put into the statute for the benefit of taxpayers. Cf. *Piper* v. *Willcuts*, *supra*. They would have benefited more had there been no such provision. They were given no election as in the case of capital net gains. The part of the provision which relates to the computation of a partial tax and the deduction of 12½ percent of the capital net loss prevents a capital net loss from having a greater benefit to a taxpayer than a reduction in his tax of 12½ percent. But that portion of the provision would still leave a benefit to those taxpayers in the lower tax brackets, and, so that in no event could a taxpayer get any greater benefit from a capital net loss than from an ordinary loss, the final portion of the provision was inserted. We think that it accomplishes the purposes for which it was intended.

Reviewed by the Board.

*Decision will be entered for the respondent.*