*673 OPINION.
Opper:
The question is whether income’which petitioner received from the use of his songs in two motion pictures is taxable as capital gain or ordinary income. Petitioner took the former view and in his tax return the income, while conceded to be taxable in full, was treated as partly offset by capital losses. Respondent has determined a deficiency based on the assumption that petitioner’s compensation was ordinary income and that capital losses could not be deducted from it. The correctness of this action petitioner contests here.
The parties differ as to the character and proper interpretation of the contracts between petitioner and RKO pursuant to which he was engaged to supply the musical material for the two motion pictures in question. It is respondent’s contention that the contracts called for the rendition of personal services and hence that the compensation thereunder was clearly ordinary income, and that, if the contracts resulted in the acquisition by RKO of rights in petitioner’s property, the transaction was not a sale but merely a license, with the result that its proceeds are not to be treated as gains from the sale or exchange of capital assets. Petitioner on the other hand takes the position that all or, in the alternative, at least a considerable portion, estimated by him at 50% in one instance and 40% in another, of the materials supplied were capital assets and that the effect of the contracts was a sale thereof resulting in the receipt of capital gain.
Whether or not the contracts called solely for the rendition of personal services, it seems clear from their language and from the practical effect given to them in their performance by petitioner that some personal services on his part were involved. In order to comply with the provision that the material supplied by him be “necessary and suitable”, petitioner spent a large part of his time in attending conferences and rehearsals. Even if we assume that the original work of composition is not to be regarded as the rendition of personal services, the most that can be said of the contract is that it was a hybrid arrangement, dealing in part with capital assets and in part with the performance of some personal services. Whether the compensation received is susceptible of apportionment, *674 and, if so, how this could be done, presents serious difficulties.[1] And it seems equally difficult to regard the work involved in such composition as other than the rendition of services of an intensely personal nature. It is true that to some extent, and presumably as the result of chance circumstance, the petitioner had on hand, material resulting from his creative work in earlier years which was available for and was adapted to use in the performance of the contract. But this was not called for thereby, and there can be no question that if petitioner had furnished suitable musical material which was the result of his current efforts' his performance under the contract would have been complete. It seems questionable in the extreme whether the purely fortuitous contribution by petitioner of the result of labors performed by him in previous years is sufficient to transmute the present contract, even in part, into one resulting in the disposition of capital assets, assuming that unpublished or uncopyrighted musical and literary works can be considered as such.
These, however, seem to us questions which it is unnecessary to decide in this proceeding. For it is not sufficient to grant that the contracts dealt with capital assets. In order for income to be available for offset by capital losses there must be capital gain from “sales or exchanges”[2] of such assets. See 2 Paul & Mertens “Law of Federal Income Taxation”, 532; Henry Harmel, 19 B. T. A. 376; affd., 287 U. S. 103. We think the respondent is correct in suggesting that this was no sale, but at most a mere license to US9 the material in connection with specific motion picture productions. While there is no magic in words, and to call the contracts “licenses” rather than “sales” advances us little; yet the term is but a shorthand expression of the nature of the ultimate transaction, which, in its essence, appears not to be the final disposition of anything,[3] but a mere permission to use, in a restricted field and for a specific purpose, for a stipulated sum. The rights granted by petitioner under the contracts were limited to the use of the material in question in the motion pictures under production, and in the advertising and exploitation thereof. Such rights in the words and' music of the songs as were not expressly granted or limited by the contract were retained by petitioner, even including the right to license their use in other motion pictures. The copyrights were to be his and assignment of rights thereunder to the motion picture company was confined to those expressly granted in order to fulfill the purpose *675 of tbe contract. In these circumstances “the author remained the owner of his works and merely licensed their use for a particular object for a period. There was no transfer of title necessary to a complete sale.” Sabatini v. Commissioner, 98 Fed. (2d) 753 (C. C. A., 2d Cir.). Accordingly, we conclude that the income in question is not to be regarded as capital gain but is subject to treatment as ordinary income.

Decision will be entered for the respondent.

 Petitioner characterized it as “very difficult to answer” and his own estimate as “only a guess.”

 Revenue Act of 1934, sec. 117 (d).

 So much is almost conceded by petitioner, for in seeking to demonstrate that these were not personal service contracts his brief states: “the sole right obtained by RKO was the right to use the songs in motion pictures,” and distinguishes the case of an employee where “the author had parted with his entire property in the work and had no interest l^ft * * *.” Shapiro, Bernstein & Co. v. Bryan, 27 Fed. Supp. 11.