The J. E. AND L. E. MABEE FOUNDATION, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 74–C–135.

United States District Court, N. D. Oklahoma.

Jan. 31, 1975.

Donald P. Moyers, Tulsa, Okl., for plaintiff.

Eugene G. Sayre, Dept. of Justice, Dallas, Tex., and Nathan G. Graham, U. S. Atty., N. D. Okl., Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

BOHANON, District Judge.

This case came on for trial before the Court sitting without a jury on December 19, 1974. After considering the stipulated facts, the testimony of the witness, the exhibits admitted into evidence, and the briefs of the parties, the Court finds and concludes as follows:

Plaintiff, Mabee Foundation, Inc. hereinafter referred to as Foundation), was organized in 1948 as a nonprofit Delaware corporation, qualified to do business in Oklahoma, with its principal office in Tulsa, Oklahoma. Foundation maintains its books and records on a "cash" basis of accounting, and for tax purposes, has a fiscal year ending on August 31. Foundation has been declared an organization exempt from tax under the provisions of Section 501(c) (3) of the Internal Revenue Code of 1954 (26 U.S.C.).

Mabee Petroleum Corporation (hereinafter referred to as Petroleum) is a Delaware corporation qualified to do business in Oklahoma and Texas, with offices in Tulsa, Oklahoma, and Midland, Texas. All of the issued and outstanding common stock of Petroleum has been owned by Mabee Foundation since late 1948, and it has been operated since that time as a wholly owned subsidiary of Foundation.

Prior to 1947, J. E. Mabee and his wife were substantial contributors to various charitable organizations. These two individuals were also the only stockholders of Mabee Oil & Gas Company. In that year, Mr. Mabee became dissatisfied with the method in which his charitable contributions were being funded, and asked his advisors to develop a more systematic and organized plan. To achieve this goal, Foundation was created, as well as two new corporations, Petroleum and Mabee Royalties, Inc. (hereafter Royalties). Mr. Mabee chose the oil and gas properties he wished to use to fund his charitable activities, and caused Mabee Oil & Gas Company to contribute these properties to Petroleum. The remaining properties of Mabee Oil & Gas Company were transferred to Royalties, and the Mabee Oil & Gas Company was liquidated. A detailed description of the facts surrounding the creation of Foundation, Petroleum, and Royalties is set forth in the decision of Mabee Petroleum Corp. v. United States, 203 F.2d 872 (C.A. 5, 1953) and need not be repeated here.

Since its creation, Petroleum has been engaged in the development, ownership

and production of oil and gas, largely through the ownership of working interests in oil and gas leases. Beginning October 1, 1951, and ending December 31, 1958, Petroleum declared, at various times, dividends in kind to Foundation, its sole stockholder, in the form of overriding royalties on various oil and gas leases owned and operated by Petroleum in Texas. Generally, these dividends in kind left Petroleum owning approximately 20 to 30 percent of the oil and gas leasehold estate mineral interests with Foundation owning from 70 to 80 percent of the oil and gas leasehold estate mineral interests. Petroleum as the working interest owner bore all of the costs associated with the operation of these leases.

Prior to the death of Mr. Mabee in 1961, Foundation received the bulk of its income from the overriding royalties on the leases in which Petroleum held a small working interest. In turn, this substantial amount of income was disbursed by the Foundation for charitable purposes. However, upon the deaths of Mr. Mabee in 1961, and his widow in 1965, Foundation acquired the bulk of the assets of their estates, which included the stock in Royalties and other assets, such as stocks, bonds, notes and rental properties. Foundation caused the corporations so acquired to be liquidated in 1969 and 1970, and the assets of these corporations were transferred directly to Foundation. Some of Royalties' assets had included working interests in oil and gas properties. Upon receipt of these working interests, Foundation immediately transferred these working interests directly to Petroleum as an additional contribution of capital. Thus, after the liquidation of these corporations, the asset structure of Foundation was substantially changed, since prior to that time the assets consisted mainly of the overriding royalty interests acquired from Petroleum.

Since the death of Mrs. Mabee in 1965, the board of directors of Petroleum and the trustees of Foundation have been the same five loyal individuals, i. e., Guy Mabee (nephew of J. E. Mabee), Joe Mabee (son of Guy Mabee), John Cox (nephew of L. E. Mabee), C. T. Forrest (long-time employee of the Mabees), and Donald P. Moyers (attorney for the Mabees).

For tax purposes, Petroleum operated at a loss for the fiscal year ending September 30, 1971. It also operated at a loss for tax purposes in each of its five preceding fiscal years.

During the fiscal year ending August 31, 1971, Foundation received gross income in the amount of $2,867,119.90 from all its oil and gas royalties. Of this total, $1,109,963.68 was received from the overriding royalties that had been acquired by Foundation as dividends in kind from Petroleum.

For the fiscal year ending August 31, 1971, Foundation filed its Return of Organization Exempt from Income Tax, Form 990, and reported that it owed no income tax for that fiscal year. This return was audited by the Internal Revenue Service, and it was determined that the overriding royalty income ($1,-109,963.68) received by Foundation from the overriding royalties acquired from Petroleum constituted unrelated business taxable income, as that term is defined in the provisions of Section 512(b)(15) of the Internal Revenue Code of 1954. After allowing for the deduction of certain expenses provided for in the applicable statute, the Internal Revenue Service determined that Foundation had realized $730,913.31 in unrelated business taxable income for the fiscal year ending August 31, 1971, and, accordingly, assessed additional income tax in the amount of $343,858.38, plus interest of $36,105.13.

This total amount was paid by Foundation. Thereafter, the Foundation filed a timely claim for refund of this tax. This claim for refund was disallowed and this action was then timely instituted.

This Court has jurisdiction over the subject matter of this litigation pursuant to the provisions of 28 U.S.C. §

1346(a)(1). Venue is proper pursuant to the provisions of 28 U.S.C. § 1402(a)(2).

■ The Government contends that the $1,109,963.68 received by Foundation from the overriding royalty interests acquired from Petroleum is subject to the unrelated business income tax imposed upon income received by a tax exempt organization from royalties derived from another organization over which the exempt organization has control, pursuant to the provisions of Section 512(b)(15) of the Internal Revenue Code. Foundation contends that the income received from the overriding royalties in question was "derived directly" from property interests owned by it, and, accordingly, was not "derived" from Petroleum. Thus, Foundation contends the income is exempt from taxation under the provisions of Section 512(b)(2) of the Code. For the reasons stated hereinafter, the Court finds that the income in question is subject to taxation as maintained by the Government.

It must be remembered that an overriding royalty interest as that expression is used in the oil industry represents a portion of the leasehold working interest chargeable by contract to produce and market the oil and gas. Thus the carved out overriding royalty from the leasehold estate is a part of the leasehold estate though it is eliminated from paying its share of the cost of operations and is not in truth and in fact a true royalty interest because of its potential responsibility for the operation of the leasehold estate should the non-overriding royalty interest be insufficient to pay the cost of production.

Congress first added the "unrelated business income" provisions of the Internal Revenue Code in 1950 to place tax exempt organizations on a par with their tax-paying competitors. Prior to that time, exempt organizations had purchased businesses and operated them without paying taxes. Since those organizations paid no tax, they attained an advantage over their tax-paying competitors by being able to expand their businesses more rapidly with their additional funds. The purpose of the enactment of the "unrelated business income" provisions of the Code was to eliminate this "unfair" competition on the part of the exempt organizations. However, Congress specifically excluded from the scope of these provisions income received from interest, royalties, and rents, since these types of income had traditionally been considered "passive" income.

However, certain tax exempt organizations abused this exemption by causing the profits of their controlled corporations to be passed on to them in the form of interest, rents, or royalties, thereby avoiding the tax on the subsidiaries' income, which policy is so keenly applied by Foundation in this case. See United States v. Robert A. Welch Foundation, 334 F.2d 774 (C.A. 5, 1964).

Being aware of these abuses, Congress sought to close this loophole in the Tax Reform Act of 1969 by enacting Section 512(b)(15) of the Code. The intent of Congress in enacting this statute is clearly stated in the Report of the House Ways & Means Committee:

> *"Inclusion of interest, rents, and royalties from controlled corporations (sec. 121 of the bill and sec. 512 of the code)*
>
> In certain cases exempt organizations do not engage in business directly but do so through nominally taxable subsidiary corporations. In many such instances the subsidiary corporations pay interest, rents or royalties to the exempt parent in sufficient amount to eliminate their entire income, which interest, rents, and royalties are not taxed to the parent even though they may be derived from an active business.
>
> This problem is remedied under the bill by removing the exemption from the unrelated business tax for passive income if it is in the form of interest, rents, and royalties received from controlled corporations."

H.Rep.No.91–413 (Part 1), 91st Cong., 1st Sess., p. 49, U.S.Code Cong. & Admin.News 1969, p. 1694 (also 1969–3 Cum.Bull. 232). See also, S.Rep.No. 91–552, 91st Cong., 1st Sess., p. 73, U.S. Code Cong. & Admin.News 1969, p. 2027 (also 1969–3 Cum.Bull. 471).

Thus, for periods beginning after December 31, 1969, the pertinent provisions of Section 512 of the Code (relating to "royalty" income) read as follows:

"SEC. 512. *Unrelated Business Taxable Income*

(a) Definition.—For purposes of this title—

(1) *General rule.*—Except as otherwise provided in this subsection, the term 'unrelated business taxable income' means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b).

\*　\*　\*　\*　\*　\*

(b) Modifications.—The modifications referred to in subsection (a) are the following:

\*　\*　\*　\*　\*　\*

(2) There shall be excluded all royalties (including overriding royalties) whether measured by production or by gross or taxable income from the property, and all deductions directly connected with such income.

\*　\*　\*　\*　\*　\*

(15) Notwithstanding paragraphs (1), (2), or (3), amounts of interest, annuities, royalties, and rents derived from any organization (in this paragraph called the "controlled organization") of which the organization deriving such amounts (in this paragraph called the "controlling organization") has control (as defined in section 368(c)) shall be included as an item of gross income (whether or not the activity from which such amounts are derived represents a trade or business or is regularly carried on) in an amount which bears the same ratio as—

(A)(i) in the case of a controlled organization which is not exempt from taxation under section 501(a), the excess of the amount of taxable income of the controlled organization over the amount of such organization's taxable income which if derived directly by the controlling organization would not be unrelated business taxable income, or

(ii) in the case of a controlled organization which is exempt from taxation under section 501(a), the amount of unrelated business taxable income of the controlled organization, bears to

(B) the taxable income of the controlled organization (determined in the case of a controlled organization to which subparagraph (A)(ii) applies as if it were not an organization exempt from taxation under section 501(a)), but not less than the amount determined in clause (i) or (ii), as the case may be, of subparagraph (A),

both amounts computed without regard to amounts paid directly or indirectly to the controlling organization. There shall be allowed all deductions directly connected with amounts included in gross income under the preceding sentence."

It is obvious from the foregoing statement in the House Report that Congress intended to tax the type of income that is in question in this case. Foundation absolutely controlled the operation of Petroleum, it owned 100 percent of Petroleum's common stock, and since 1965, its board of directors have been the same individuals who were and are the trustees of Foundation. The overriding royalty interests owned by Foundation were exceedingly large in relation to the working interests retained by Petroleum, and, therefore, the bulk of the in-

come from these leasehold mineral interests was funneled to Foundation. Petroleum was operated at a loss during the fiscal year in suit, and for the preceding five fiscal years, while the income attributable to the overriding royalty interests in question was passed on, tax free, to Foundation. Since the facts in this case present a situation identical to that described in the above-cited House Report, and since the intent of Congress is so clearly stated, the Court must conclude that the income derived by Foundation from the overriding royalty interests acquired from Petroleum constitutes "unrelated business taxable income" as that term is defined in Section 512(b)(15) of the Code. Accordingly, the income derived from these overriding royalties is subject to the tax imposed by Section 511(a)(1) of the Code.

Foundation's contention that it derived the income in question "directly" from a property interest owned by it under Texas law is of no merit. This formalistic, semantic argument has been advanced in numerous previous cases dealing with federal taxation, and the argument has been rejected by the Supreme Court in each instance. In Morgan v. Commissioner, 309 U.S. 78, pp. 80–81, 60 S.Ct. 424, p. 426, 84 L.Ed. 585 (1940), the Court stated that:

> "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, federal law must prevail no matter what name is given to the interest or right by state law."

See also, Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932); Palmer v. Bender, 287 U.S. 551, 555, 53 S.Ct. 225, 77 L.Ed. 489 (1933); and Carr Staley, Inc. v. United States, 496 F.2d 1366 (C.A. 5, 1974).

Congress is granted a plenary power under Article I, Section 8 of the Constitution to lay and collect taxes. The only limitation on that power of taxation is where its exercise has been so arbitrary as to not constitute a tax, but, rather, a confiscation of property in violation of the Fifth Amendment. Brushaber v. Union Pacific RR Co., 240 U.S. 1, 24–25, 36 S.Ct. 236, 60 L.Ed. 493 (1915). Since it is clear that Congress intended to tax the "royalty" income in question, and such taxing does not constitute a confiscation of property in violation of the Fifth Amendment, then Foundation's contention based upon ownership of property interests under state law must fail, and the Court denies the prayer of the plaintiff for judgment in the amount of $379,963.51.

An appropriate Judgment will accordingly be entered herein.

### JUDGMENT

Based upon the Memorandum Opinion filed herein this day, the Court enters this Judgment in favor of the defendant and against the plaintiff.

It is, therefore, ordered, adjudged and decreed that the Internal Revenue Service assessment for 1971 was legal and proper, and the prayer for refund of the taxes and interest timely paid is denied, and plaintiff's action is dismissed.