CHARLES M. LANG AND EMSY L. LANG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lang v. Commissioner
Docket No. 3357-73.
United States Tax Court
T.C. Memo 1977-302; 1977 Tax Ct. Memo LEXIS 139; 36 T.C.M. (CCH) 1194; T.C.M. (RIA) 770302; September 7, 1977, Filed John A. Bailey, for the petitioners. Charles N. Woodward, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
1968
$8,881.00
1969
1,318.00
1970
924.00
Because of concessions made by the parties, the issues for decision are: (1) Whether cash payments received by petitioners upon settlement of a law suit and in consideration for ratification of certain oil and gas leases and other conveyances constitute property acquired by inheritance or constitute *141 income from such property. (2) If the cash payments constitute income from property acquired by inheritance, whether petitioners are entitled to cost depletion in excess of percentage depletion. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Charles M. Lang and Emsy L. Lang, husband and wife, resided in Houston, Texas at the time they filed their petition herein. Charles M. Lang is a party to this case by virtue of having filed a joint return with his wife. Therefore, when we hereafter refer to petitioner, we will be referring to Emsy L. Lang. Petitioner's aunt, Cora Strong ("Cora"), died testate in 1959. She was one of nine children, two of whom, including petitioner's mother, predeceased her. Prior to her death, Cora had executed a will, various oil and gas leases, deeds and other conveyances. On March 21, 1951, she executed a warranty deed conveying a 209.97 acre tract of land in Anderson County, Texas to her then living six brothers and sisters. The following month those six brothers and sisters executed a lease contract, under which the 209.97 acre tract was leased to Cora for the duration of her life. They also *142 granted to Cora a power of attorney to execute oil and gas leases with respect to the 209.97 acre tract. Thereafter, on July 8, 1953, Cora executed an exploration contract and oil and gas lease on the 209.97 acre tract. She subsequently executed a ratification of the July 8, 1953 oil and gas lease on August 27, 1953, as agent and attorney in fact for her then living brothers and sisters. On July 9, 1953 Cora also executed an exploration contract and oil and gas lease on a 332.1 acre tract of land in Anderson County, Texas. This tract was composed of four parcels: the Starkey tract comprising 155.3 acres; the Andy Turner tract comprising 1.76 acres; the main Patterson tract comprising 97 acres more or less; and the southeast 80 acres of the Patterson tract. The two Patterson tracts were created on April 24, 1955, when Cora executed a warranty deed conveying 177 acres more or less of the 332.1 acre tract and 1/2 of her interest in the minerals therein to Charles T. Patterson and wife. On January 18, 1954, Cora executed an oil and gas lease on a 74.27 acre tract of land in Anderson County, Texas. As a result of the execution of this lease and the other leases and deeds, Cora owned *143 the following interests in the 209.97, 332.1 and 74.27 acre tracts at the date of her death: 209.97 acre tract: None 97 acre main Patterson tract: A 1/8 royalty interest in an undivided 108/1530 interest. Southeast 80 acres of Patterson tract: A 1/8 royalty interest in an undivided 108/1530 interest. 155.3 acre Starkey tract: A 1/8 royalty in an undivided 75/680 interest. 1.76 acre Andy Turner tract: A 1/8 royalty interest in an undivided 3/20 interest. 74.27 acre tract: No evidence; however prior to executing an oil and gas lease on this property, Cora owned all the minerals and presumably owned a 1/8 royalty interest in all the minerals afterwards. Prior to executing the oil and gas leases on the 74.27, 209.97 and 332.1 acre tracts, Cora had on February 19, 1953 executed a will bequeathing her entire estate to her six brothers and sisters then living. The will was silent as to the descendants of the two sisters who had predeceased Cora. Following Cora's death in 1959, petitioner and the two children of Cora's other predeceased sister successfully contested Cora's will on the ground that Cora lacked testamentary capacity at the time of execution of this *144 will. [1] As a result of the successful will contest, Cora's estate descended to and was inherited by her six surviving brothers and sisters and the children of her two predeceased sisters, thereby entitling petitioner to an undivided 1/8 share of Cora's estate. Following the successful culmination of the will contest, petitioner and her two cousins filed suit against various oil companies and other parties seeking to set aside the oil and gas leases executed by Cora on the 209.97, 332.1 and 74.27 acre tracts; the warranty deed conveying the 209.97 acre tract to her then living brothers and sisters; the lease contract leasing the 209.97 acre tract to Cora for life; the ratification of the oil and gas lease on the 209.97 acre tract executed by Cora as agent and attorney in fact for her six brothers and sisters; and the warranty deed conveying the southeast 80 acres of the Patterson tract to Charles T. Patterson and wife. The basis of this action was that Cora was of unsound mind and lacked mental capacity at the time she executed the conveyances. In addition, the suit sought an accounting and recovery *145 of the value of the oil and gas produced under the three leases. At the time of Cora's death in 1959, oil and gas production had begun on the 209.97 and 332.1 acre tracts.However, production did not occur on the 74.27 acre tract until 1965. Oil production on the 332.1 acre tract and from one well on the 209.97 acre tract was derived from a mineral zone composed of Woodbine sand. Four other wells on the 209.97 acre tract produced oil from sub-Clarksville sand. During the period from 1956 through November 30, 1967 the net revenue from oil and gas produced from the 209.97 acre tract was $994,964.86. The net revenue from the 97 acre main Patterson tract, the 155.3 acre Starkey tract and 1.76 acre Andy Turner tract during the period from 1957 through July 1966 was as follows: 97 acre main Patterson tract
$ 580,000
155.3 acre Starkey tract
2,159,818
1.76 acre Andy Turner tract
91,625
And the net revenue from oil and gas produced from the southeast 80 acres of the Patterson tract was $1,255,969 during the period from July 1956 through October 1967. [2]
*146 After several years, petitioner and the defendant oil companies compromised and settled petitioner's suit in 1968. Petitioner ratified the oil leases, deeds and other conveyances and released the defendants from all other claims she might have, including her action for an accounting and recovery of production income for the period from 1959 through 1968. [3] In consideration, petitioner and the other plaintiffs received cash and overriding royalty interests in the contested oil leases. The oil companies assigned petitioner and the other plaintiffs the following overriding royalty interests: 209.97 acre tract: a 5/16 of 1/4 overriding royalty in the deep interest below the depth of 1500 feet beneath the surface. 155.3 acre Starkey tract: a 3/16 of 1/4 of 75/680 overriding royalty in the deep interest below the depth of 1500 feet beneath the surface. 97 acre main Patterson tract: a 3/16 of 1/4 of 108/1530 overriding royalty in the deep interest below the depth of 1500 feet beneath the surface. southeast 80 acres of the Patterson tract: a 3/16 of 1/4 of 108/1530 overriding royalty interest in the deep interest below the depth of 5809 feet beneath the surface and a 1/4 of *147 108/1530 of 4/16 in the shallow interest down to the depth of 5809 feet beneath the surface. 1.76 acre Andy Turner tract: a 3/16 of 1/4 of 3/20 overriding royalty in the deep interest below the depth of 1500 feet beneath the surface. 74.27 acre tract: a 1/4 of 3/16 overriding royalty in the deep interest below the depth of 1500 feet beneath the surface. *148 In addition, petitioner and the other plaintiffs received $90,000 from Lone Star Producing Company and the other individuals for release of their claims and ratification of the mineral leases with respect to the deep interests in the 209.97 and 332.1 acre tracts; $6,000 from Atlantic Richfield Company and General American Oil Company for release of their claims and ratification of the mineral leases with respect to the shallow interests in the southeast 80 acres of the Patterson tract; and $6,250 from the Caroline Hunt Trust Estate for release of their claims and ratification of the mineral lease with respect to the deep interests in the 74.27 acre tract. Petitioner's share of the above cash payments equaled $51,125. On her 1968 income tax return petitioner did not include any portion of the $51,125 cash payments in her gross income. Respondent determined that the entire amount was includible in her gross income as ordinary income subject to a percentage depletion allowance. OPINION The first issue for decision is whether the cash payments of $51,125 received by petitioner in settlement of her suit against certain oil companies and other parties constitute property acquired *149 by inheritance or constitute income from such property. If the cash payments constitute property acquired by inheritance as petitioner claims, then they are not includible in her gross income. Section 102(a). [4] However, if the cash payments constitute income from property acquired by inheritance as respondent claims, then they are includible in petitioner's gross income under section 102(b)(1) [5] and are taxed as ordinary income subject to a depletion deduction. Burnet v. Harmel,287 U.S. 103, 112 (1932); Murphy Oil Co. v. Burnet,287 U.S. 299, 301, 302 (1932). Petitioner asserts that the cash payments were not paid as an additional consideration for ratification of the oil and gas leases (bonus) [6] nor made in discharge *150 of petitioner's claim against the oil companies for pre-1968 production income (royalties). Rather, she asserts that they were paid in settlement of her claim to an intestate share in the minerals in place of the contested leases as well as her claim to the surface rights to the 209.97 acre tract and southeast 80 acres of the Patterson tract. She argues that those cash payments were therefore property acquired by inheritance and are excludible from her gross income under section 102(a). We turn first to petitioner's assertion that the payments were partially in settlement of her claims to surface rights in two tracts of land.Although the evidence on this issue is meager, we think it is sufficient to support the inference that the lessee oil companies contributed all the funds making up the cash payments.Neither the grantees of the 209.97 acre tract nor of the southeast 80 acres of the Patterson tract contributed any part of the cash *151 payments. Thus, we conclude that the cash payments were not paid in settlement of petitioner's claim to surface rights to the 209.97 acre tract and southeast 80 acres of the Patterson tract. In addition, petitioner has presented no credible evidence to support her assertion that the cash payments were in settlement of her claim to the minerals in place in the contested leases. On the contrary, what evidence there is suggests that the cash payments were in settlement of petitioner's claim for an accounting and recovery of pre-1968 production income. For example, the amount of the cash payments received by petitioner and the other plaintiffs in their suit approximates the amount of production income (exclusive of interest) they would have received for the period from 1956 through 1967 had they held a royalty interest equivalent to the overriding royalty interest they received in settlement of their suit. Petitioner nevertheless asserts that she, the other plaintiffs in the suit and the oil companies did not intend the payments to be bonuses nor to be in discharge of her claim for pre-1968 production income. We disagree. Contrary to petitioner's assertion, the agreements provided *152 merely that petitioner and the other plaintiffs would release their claim for an accounting and for recovery of pre-1968 production income in consideration for cash and overriding future royalties. Nothing in the settlement documents allocated any portion of the cash payments, and nothing in the documents suggests that petitioner released her claim for an accounting for no consideration. In addition, petitioners have failed to present any credible evidence that the payments were not paid in consideration for ratification of the existing oil and gas leases. In light of these facts we conclude that the cash payments were paid in whole either as additional compensation for ratification of the oil and gas leases (bonus) or in discharge of petitioner's claim against the oil companies for pre-1968 production income (royalty) and are taxable as ordinary income subject to a reasonable allowance for depletion. Burnet v. Harmel,supra;Murphy Oil Co. v. Burnet,supra.
The final issue for decision is whether petitioners are entitled to an allowance for cost depletion in excess of the allowance for percentage depletion allowed by respondent. Section *153 611(a) provides that "there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion." The formulae for computing the deduction allowed by this section are set forth in part in sections 612 [7] and 613. [8] Section 613 authorizes percentage depletion while section 612 deals with cost depletion and provides that a taxpayer's basis for determining cost depletion "shall be the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property." *154 Petitioner as an heir of the late Cora Strong filed suit against various oil companies and other individuals in 1965 to set aside certain oil and gas leases and other conveyances executed by Cora Strong. If the suit had been successful Cora Strong's interests in the minerals in place would have passed to her heirs. The suit was eventually settled, and petitioner received cash and overriding royalties in consideration for ratification of the oil and gas leases and the release of all other claims against the oil companies. Therefore, petitioner's adjusted basis in the economic interests she received in settlement of the law suit would be determined under section 1014 since those interests were acquired by inheritance. Lyeth v. Hoey,305 U.S. 188 (1938). Section 1014 provides generally that the basis of property acquired from a decedent shall be its fair market value at the date of the decedent's death. The regulations under section 611 define fair market value of mineral properties as "that amount which would induce a willing seller to sell and a willing buyer to purchase." Section 1.611-1(d)(2), Income Tax Regs. These regulations also provide that in determining *155 fair market value of mineral properties analytical appraisal methods of valuation will not be used where the fair market value can reasonably be determined by any other method. Section 1.611-2(d)(2), Income Tax Regs. Such other methods would include the actual sale of the property; actual sales of similar properties; and bona fide ofers to sell or purchase the property. In the absence of such sales or offers, valuations made for purposes other than federal taxation can be used to determine fair market value. Section 1.611-2 (d)(1), Income Tax Regs.; Fiske, Federal Taxation of Oil and Gas Transactions, par. 13.01-13.05, pp. 157-169 (1976). Petitioner presented no evidence whatever, with regard to the fair market value of her economic interest in the 74.27 acre tract. With respect to the 209.97 and 332.1 acre tracts, petitioner did not attempt to determine the fair market value of the economic interests she inherited from Cora Strong by a comparative sales method or through the use of prior appraisals, such as that which may have been used at the time Cora's estate was probated.In addition, petitioner offered no explanation for this failure other than Mr. Lang's statement that he *156 had "never heard of anybody selling an interest." Petitioner has attempted to establish the fair market value of these economic interests by means of an analytical appraisal method. However, that analytic appraisal was not based on the testimony of an expert witness, but rather upon the opinion of her husband. Mr. Lang, a licensed real estate broker, had some prior experience in drawing maps of oil and gas deposits from seismographic data, but had never studied oil and gas appraisal methods, nor had he ever valued any oil and gas properties.He offered an appraisal based upon his estimate of the recoverable oil under the land, the expected duration of production and a current price of $3 per barrel. However, his estimates of recoverable oil reserves and the expected duration of production were totally unsubstantiated and incomplete. His estimate of the recoverable oil reserves was not based upon an independent appraisal of the specific oil and gas deposits, but was based upon the oil production records of the various oil companies holding the working interests in the minerals. In addition, his estimate of the expected duration of production was based upon an analogy with the East *157 Texas oil fields. Mr. Lang testified that those fields had "already lasted 40 years." He then concluded that since substantial portions of the oil deposits underlying the 209.97 and 332.1 acre tracts were derived from similar oil formations, that the expected duration of production was 30 years. However, petitioner offered no evidence to substantiate the conclusion that the two oil fields were similar and that the analogy was proper. In addition to these deficiencies in Mr. Lang's appraisal, he also failed to apply a discount in arriving at the present value of the expected income accruing to petitioner's economic interests. He also failed to take into account that the overriding royalty interests received by petitioner and the other plaintiffs varied between 3/16 and 5/16 of 1/4 of the interests held by Cora Strong at her death. His computations were based on the erroneous premise that petitioner and the other plaintiffs received a 5/16 of 1/4 overriding royalty of the interests held by Cora Strong prior to execution of the leases and other conveyances. However, from the evidence, it is clear that petitioner and the other plaintiffs received a 3/16 of 1/4 overriding royalty *158 interest in the 332.1 acre tract. In light of this inadequacy of petitioner's analytical appraisal of the fair market value of the economic interests she inherited from Cora Strong and her failure to ascertain the fair market value of those interests by a comparable sales method, we conclude that petitioner has failed to establish the fair market value of those interests at the date of Cora Strong's death. Accordingly, we hold that petitioner has failed to establish a cost basis for purposes of section 613 and is therefore not entitled to an allowance for cost depletion in excess of the allowance for percentage depletion allowed by respondent. [9]
*159 Decision will be entered under Rule 155. Footnotes
1. Gray v. Bird,380 S.W. 2d 908↩ (Tex. Civ. App. 1964).
2. No evidence was presented with regard to the net revenue from oil and gas produced from the 74.27 acres.↩
3. Petitioner and the other plaintiffs executed three ratification and release agreements which were substantially similar and provided: For the same consideration, the undersigned fully release all of the Defendants in said suit, * * * and all purchasers of oil or gas produced from the land described in the oil and gas leases above referred to from all claims and causes of action of every kind and character based on any inheritance from Cora E. Strong to oil and gas heretofore produced from any of the land described in the instruments referred to above herein or for the proceeds from or the value of such oil and gas, and from any damages whatsoever for producing the same, including claims or causes of action based on any right, interest or cause of action of Cora E. Strong during her lifetime, or on any right, interest or cause of action inherited by said Plaintiffs or any of them from Cora E. Strong, including any such claim, cause of action or accounting for any royalty payment for oil and gas produced prior to May 1, 1968; however, there is excepted from this Ratification and Release the royalty interest which Plaintiffs have as heirs of Cora E. Strong on oil and gas produced on or after May 1, 1968 under said Oil and Gas Lease of July 9, 1953.↩
4. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. Section 102(a) provides: (a) General Rule.--Gross income does not include the value of property acquired by gift, bequest, devise or inheritance. ↩
5. Section 102(b)(1) provides: (b) Income.--Subsection (a) shall not exclude from gross income-- (1) the income from any property referred to in subsection (a);↩
6. "The term 'bonus' is applied to sums paid or contracted as an additional consideration for a lease over and above the usual royalty." Sheppard v. Stanolind Oil and Gas Company,125 S.W. 2d 643 at 647↩ (Tex. Civ. App. 1939).
7. Section 612 provides: Except as otherwise provided in this subchapter, the basis on which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property. ↩
8. Section 613 provides in pertinent part: (a) General Rule.--In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). * * *↩
9. Petitioner, who was unable to prove her basis in the mineral interests she acquired from Cora Strong, also asserts that in order for respondent to prevail he must prove that the allowance for percentage depletion in fact exceeds the allowance for cost depletion. In effect, petitioner argues that even though she is unable to prove her basis in the mineral interests, that because respondent also is unable to ascertain her basis, that nonetheless, we should allow her an allowance for cost depletion on the weight of her unreliable and unsubstantiated computations of cost basis. We are of the opinion that section 613 does not mandate such an absurdity. Rather, we believe that petitioner must prove her cost basis in the mineral interests and cannot shift that burden to respondent. Having failed to meet this burden she is only entitled to an allowance for percentage depletion for the years in issue.↩